UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALSTOM POWER, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:04cv920 (PCD) |
| | : | |
| | : | |
| SEEPEX, INC., | : | |
| | : | |
| Defendant. | : | |

**RULING ON PLAINTIFF'S MOTION TO ENJOIN DEFENDANT
SEEPEX, INC. FROM PURSUING ARBITRATION**

Plaintiff, Alstom Power, Inc., moves [Doc. Nos. 104, 115] to enjoin Defendant Seepex, Inc., from pursuing the matter before the London Court of International Arbitration until the Court renders a decision on Defendant's pending Motion to Stay Pending Arbitration[1] [Doc. No. 37]. For the reasons that follow, Plaintiff's Motion is **denied**, and Defendant's Motion to Stay is **granted**.

**I.   Background**

Familiarity with the facts of this case is presumed. Accordingly, only the facts relevant to the Court's resolution of the present motion are recited. On November 19, 1999, Plaintiff drafted

---

[1] In its motion to Stay Pending Arbitration, Defendant argues, alternatively, that if the Court does not find that the case is referable to arbitration, that the case should be transferred or dismissed. Because the Court concludes that the matter should be referred to arbitration, it does not reach the merits of these alternative arguments. Accordingly, Defendant's requests to transfer and dismiss the case are denied without prejudice.

and sent to Defendant a Purchase Order[2] for pumps.  The Order included a detailed set of terms and conditions, including, among other things, separate provisions entitled "applicable law" and "arbitration."  The parties' dispute centers around these provisions.  The Order provides in relevant part:

> 1.   ACCEPTANCE:   The Purchase Order ("Order") between Purchaser and Seller shall consist of the Project Specific Terms and Conditions of Purchase and any detailed specifications, drawings and samples specifically incorporated by reference on the face hereof.  Seller's acknowledgment of receipt of this Order, or shipment of goods or commencement of services ordered hereunder, shall constitute acceptance of the Order.  Purchaser hereby objects to any different or additional terms in any proposal, acknowledgment, acceptance or other instrument of the Seller.  Purchaser's acceptance of any instrument of Seller is expressly conditioned on Seller's assent to the Project Specific Terms and these General Terms and Conditions of Purchase.  In the event of conflict between any project specific terms included in this Order and these General Terms and Conditions of Purchase, the Project Specific Terms shall prevail.
>
> 14.   REMEDIES: In addition to Purchaser's remedies expressly provided for herein, Purchaser reserves the right to all other remedies available at law and in equity in the event of Seller's breach of any provisions of this Order.  Seller will reimburse Purchaser for all costs and expenses, including reasonable attorney fees

---

[2]Plaintiff also sent to Defendant a "Purchase Order Proof Copy" on November 17, 1999, which did not contain an arbitration clause.  Plaintiff argues that the lack of an arbitration clause in this document, combined with the arbitration clause in the November 19, 1999 Purchase Order, establishes ambiguity and the lack of a mutual agreement to arbitrate.  The Court is not persuaded that the lack of an arbitration clause in the November 17, 1999 proof copy, which Plaintiff referred to as the "preliminary purchase order" in the November 19 Purchase Order, establishes ambiguity.  The proof copy identified terms essential to the agreement, including the types of pumps ordered, the price, and the dates on which the drawings of the pumps would be shipped.  The November 19 purchase order, however, was more detailed and thoroughly set forth the specifics for the project.  Defendant does not contend that the Proof Copy controls in this case, that the arbitration clause in the Purchase Order is ineffective or ambiguous, or that it did not assent to the terms of both documents.  Accordingly, the Court looks to the arbitration provision in the November 19 Purchase Order to discern whether any other provisions contained in the Purchase Order establish ambiguity.   "When there are multiple writings regarding the same transaction, the writings should be considered together in construing the contract." United Illum. Co. v. Wisvest-Connecticut, LLC, 259 Conn. 665, 671, 791 A.2d 546 (2002) (quoting Mongillo v. Commissioner of Transp., 214 Conn. 225, 229, 571 A.2d 112 (1990)).

which Purchaser incurs in enforcing the provisions of this Order.

17. APPLICABLE LAW:  Seller and Purchaser acknowledge that this Order has been negotiated primarily in the State from which this Order is issued by the Purchaser.  Therefore, this Order shall be governed and construed according to the substantive laws of that State.  Seller consents to the jurisdiction of the state and federal courts sitting in that state upon receiving notice of pending action pursuant to the relevant practices and procedures of said courts, and said courts shall have exclusive jurisdiction over all disputes arising out of this Order.

18. YEAR 2000 COMPLIANCE: The Seller hereby irrevocably represents and warrants that all its facilities,, the delivered product, software, or systems are Year 2000 compliant and that neither the performance nor functionality of the product, software, or system, operating alone and/or together with other products, software and/or systems, are and will be affected by dates prior to, during and after Year 2000; in particular;

  no value for current date will cause any interruption in the operation of the product, software or system, the product shall calculate, manipulate and represent all data values within the application domain correctly for the purposes for which they were intended,
  in all interfaces and data storage, the century in any date is specified either explicitly or by unambiguous inferencing rules,
  the Year 2000, and all the leap years beyond the year 2000, must be recognized as leap years,
  cause loss of functionality specified in the Agreement under which the product software or system was originally furnished.

  In the event of any breach of any of the above warranties, Seller shall promptly, upon receipt of such non-conformity from Purchaser, holding purchaser harmless from any cost and expense, repair the defect, replace the defective product, software and/or system with product, software and/or system complying with the above warranties, and/or take such other actions as are reasonably satisfactory to Purchaser and its customer, to restore full warranty compliance additionally and without cost to Purchaser, Seller shall, upon demand, provide to Purchaser copies of Seller's Year 2000 Compliance Testing Procedures and testing results applicable to the product, software and/or systems furnished in connection with this Order.

> IF THE GOODS SUBJECT TO THIS ORDER ARE MANUFACTURED OUTSIDE OF THE UNITED STATES, THE BELOW ARTICLE SHALL APPLY IN CASE OF ANY DISPUTES ARISING OUT OF THIS ORDER.
>
> 19. ARBITRATION:  Any controversy, dispute, or claim arising out of or relating to this Order, or the breach thereof, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration under the Rules of London Court of International Arbitration existing at the date thereof, except that in case of any conflict between the provisions of such rules and the provisions of this Order, the provisions of this Order shall govern.  The place of the arbitration shall be London, England.

On March 14, 2000, Seepex formally confirmed Plaintiff's Order with a document entitled "Order acknowledgment."

## II. Analysis

Although the parties's conduct in this case clearly establishes a contract, the Court must determine its terms.  The parties agree that Plaintiff's Proof Copy Preliminary Purchase Order and subsequent formal Purchase Order were both delivered to Defendant.[3]  Plaintiff alleges, however, and Defendant disputes, that Defendant's "Order acknowledgment" was an internal document that was never delivered to Plaintiff.  Plaintiff's Purchase Order provided that "Seller's acknowledgment of receipt of this Order, or shipment of goods *or commencement of services ordered hereunder*, shall constitute acceptance of the Order." (emphasis added.)  Six days after

---

[3] Plaintiff, in an attempt to establish that Defendant did not assent to the terms of its formal Purchase Order, argues that Defendant's failure to sign the Purchase Order establishes its lack of assent to the terms of the contract and, more specifically, the arbitration provision.  That, however, is not persuasive, as "a party may be bound by an agreement to arbitrate even in the absence of a signature." Deloitte Noraudit A/S v. Deloitte Haskins & Sells, 9 F.3d 1060, 1064 (2d Cir. 1993).  The Court refers to ordinary principles of contract formation.  In this case, Defendant's Purchase Order unambiguously set forth methods of acceptance, which did not require Defendant's signature on the Order, but rather provided that "[s]eller's acknowledgment of receipt of this order, or shipment of goods or commencement of services ordered hereunder, shall constitute acceptance of the Order." See Conn. Gen. Stat. § 42a-2-206.

the preliminary purchase order and only three days after the formal purchase order, in a letter dated November 23, 1999, Defendant notified Plaintiff that "the drawings and other required documentation will have been received" by the time Defendant received the letter.  Furthermore, Defendant does not dispute that it began performing under the Contract within days of receiving it.  Accordingly, the Court concludes that Defendant's conduct in commencing preparation of drawings for Plaintiff's pumps constituted an acceptance of Plaintiff's Purchase Order.  Accordingly, Plaintiff's Purchase Order operated as an offer which Defendant accepted by manufacturing and delivering to Plaintiff the pumps it had ordered.  The Court next considers whether the purchase order evidences the parties' mutual intent to arbitrate claims arising under the Agreement.

      The Federal Arbitration Act provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.  9 U.S.C. § 2 (2005).  Although the determination of whether a party is bound by an arbitration clause is governed by federal law, John Hancock Life Ins. Co. v. Wilson, 254 F.3d 48, 58 (2d Cir. 2002), the court utilizes state law principles of contract formation when determining whether the parties entered into a written agreement to arbitrate. Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co., 189 F.3d 289, 296 (2d Cir. 1999).  In this case, Plaintiff's Purchase Order provides for the application of Connecticut law, and both parties' briefs address the issues in terms of Connecticut law.  In determining whether the parties manifested a mutual intent to arbitrate, the court is mindful that a contractual provision is ambiguous when it is reasonably susceptible to

more than one reading.  Haber v. St. Paul Guardian Ins. Co., 137 F.3d 691, 695 (2d Cir. 1998).

      **A.**      **The Location of the Arbitration Provision in the Purchase Order**

      Defendant contends, on the one hand, that the arbitration language applies to all cases in which goods are manufactured outside of the United States, and Plaintiff contends, on the other hand, that the language regarding the location of manufacture applies only to the Year 2000 portions of the transaction.  The Court finds tenuous Plaintiff's interpretation of its document.  Although the language regarding goods manufactured outside of the United States is located under paragraph 18, regarding Year 2000 Compliance, does not contain a separate paragraph number, and is not listed within the Arbitration clause in paragraph 19, it clearly provides that "the below article" shall apply to all disputes arising out of this order.  The article below, paragraph 19, is a paragraph clearly labeled "arbitration."

      Plaintiff further contends that its reference to "this order" is ambiguous, as it could relate to the Year 2000 provisions in Paragraph 18 or to the entire document.  The term "order," however, is defined in paragraph 1 as "[t]he Purchase Order ("Order") between Purchaser and Seller shall consist of the Project Specific Terms, these General Terms and Conditions of purchase and any detailed specifications, drawings and samples specifically incorporated by reference on the face hereof."  More specifically, the term "this order" is referenced throughout the agreement as applying to the present purchase order.  Furthermore, the Year 2000 Compliance paragraph merely guarantees that whatever product is ordered will continue functioning prior to, during and after the Year 2000. The question, in turn, is whether the goods in this case were "manufactured" outside of the United States.  Plaintiff contends that the term "manufactured" is not defined and, thus, ambiguous.

### B.     The Location of Manufacture

Plaintiff argues that the term "manufactured" involves the design and development of drawings, plans, engineering and schematics, as well as component parts, approximately fifty-percent of which it alleges was completed within the United States.  To this end, Plaintiff has proffered evidence allegedly establishing, among other things, the origin of manufacture, including a bill of lading indicating that electrical control panels were "manufactured" in the United States and subsequently shipped from Norfolk, Virginia; U.S. Electrical Motor and Chesterton seal production in the United States; Dresser Industries, Inc. United States schematics; and VFD panels, inverters and transducers production in the United States and subsequent shipment.  Defendant counters that it manufactured all of the equipment for Plaintiff in Bottropp, Germany.

The term "manufactured" means "to make (as raw material) into a product suitable for use."  Webster's Third New Int'l Dictionary Unabridged 1378 (1981).  Courts have interpreted the word similarly. For example, in United States v. Int'l Paint Co., Inc., 35 C.C.P.A. 87, 93 (1948), the United States Court of Customs and Patent Appeals explained that:

> to constitute a manufacture of a thing, or a thing manufactured, it must appear that something has been produced so changed or advanced in condition from what it was before being subjected to the processing or treatment that whether of only one material or more than one, it has attained a distinctive name, character or use, different from that originally possessed by the material or materials before being subjected to the manufacturing process.

Plaintiff makes no claim, and has adduced no evidence, that Defendant's product–the pumps ordered by Plaintiff–"was [made] into a product suitable for use" within the United States.  The component parts to which Plaintiff refers, by themselves, attained the distinctive name, character, and ability for use as the product Plaintiff ordered only after they were assembled into the

7

finished product–the pump ordered and at issue in this case. Because the origin of "manufacture" of the finished product and not, as Plaintiff argues, the component parts, is the controlling issue, Plaintiff's evidence establishing that a number of component parts integrated into the finished pump were "manufactured" in the United States is not persuasive.

    **C.**    **Competing Language in the Purchase Order**

Plaintiff next argues that its Purchase Order does not unequivocally provide for arbitration because although the language in paragraph 17 provides that Connecticut "courts shall have exclusive jurisdiction over all disputes arising out of this order," paragraph 19 provides for arbitration of "[a]ny controversy, dispute or claim arising out of or relating to this Order . . . ." Plaintiff argues further that paragraph 14, in which Plaintiff "reserve[d] the right to all other remedies available at law and in equity in the event of Seller's breach of any provisions of this Order," conflicts with the arbitration provision of paragraph 19, resulting in ambiguity. These arguments are addressed below.

Defendant relies primarily upon <u>Stephens v. TES Franchising</u>, No. 3:01-2267, 2002 U.S. Dist. Lexis 13595 (D. Conn. July 10, 2002) in support of its position that arbitration clauses are unenforceable if any ambiguity exists and if unequivocal intent to arbitrate is not demonstrable. In <u>Stephens</u>, the documents provided that:

> All disputes and claims relating to this Agreement, the rights and obligations of the parties hereto, or any claims or causes of action relating to the performance of either party, and/or the purchase of franchise goods by Consultant Franchisee [plaintiffs] will be settled by arbitration . . .

That same section, however, also provided:

> "notwithstanding the foregoing, the arbitrator will have no jurisdiction over disputes relating to the ownership, validity, or registration of any mark, trade secret or copyright of Franchisor . . . .

Two sections later, the contract, under a caption entitled "Miscellaneous," the document further provided that:

> Except to the extent governed by United States trademark laws, this franchise agreement is to be construed and interpreted in accordance with the laws of the State of Connecticut. Consultant Franchisee and Franchisor hereby agree to submit any disputes between them to the jurisdiction and venue of a court of competent jurisdiction in the State of Connecticut, New Haven County.

Plaintiff's reliance on this case is misplaced. The court in Stephens did not conclude, as Plaintiff suggests, that the mere inclusion of both a clause providing for the resolution of all disputes in the courts of Connecticut and an arbitration clause results in ambiguity precluding a mutual intent to arbitrate. Rather, the court, applying the state law principle that ambiguous terms of the contract must be construed against the drafter, concluded that contradictory provisions in the agreement–one providing for the arbitration of "all disputes" and the other providing for "any disputes" to be subject to the jurisdiction and venue of a court of competent jurisdiction in the State of Connecticut, New Haven County"–could not be reconciled and, therefore, were ambiguous. See also Total Property Servs., Inc. v. Q.S.C.V., Inc.,621 A.2d 316, 321-22 (Conn. App. 1993) (finding an "absolute" conflict between a clause providing for the arbitration of "[a]ll claims or disputes" and another providing that "[a]ll disputes arising out of this contract shall be interpreted under the Commonwealth of Massachusetts with a court in the State of Massachusetts as governing body."). Christianson v. Poly-America, Inc. Med. Benefit Plan, 2002 U.S. Dist. LEXIS 20939 (October 25, 2002) (unable to harmonize language providing, "If you have a claim for benefits that is denied or ignored, in whole or in part, you may file suit in a state or federal court," with language providing, "If your claim is denied . . . final and binding arbitration is your *sole* remedy . . .") (emphasis added).

9

In this case, unlike in Stephens, the arbitration language at issue–which Plaintiff drafted–is not contradictory or irreconcilable, but rather, is complementary and consistent with the "applicable law" language in the agreement. Although the agreement provides that Plaintiff "reserves the right to all other remedies available at law and in equity in the event of seller's breach of any provisions of this order" and also provides that the courts of the state of Connecticut "shall have exclusive jurisdiction over all disputes arising out of this order," the seller expressly withdrew this right with respect to resolving any disputes arising from orders for goods manufactured outside of the United States, as such orders "shall be referred to and finally resolved by arbitration."  "A contract should be construed so as to give full meaning and effect to all of its provisions . . . ."  Levine v. Advest, Inc., 244 Conn. 732, 753, 714 A.2d 649, 661 (1998) (internal quotations omitted).  "The individual clauses of a contract, however, cannot be construed by taking them out of context and giving them an interpretation apart from the contract of which they are a part."  Id.

Plaintiff also argues that the arbitration clause mandates that if a conflict arises between provisions of the order, then the "applicable law" provisions of paragraph 17, and not the arbitration clause, shall govern. This argument, however, disregards the language and context of the arbitration provision which, when read in its entirety, provides that when the Rules of London Court of International Arbitration and the rules provided for the Applicable Law portion of the Agreement, the rules set forth in "this order" shall apply.  This language applies to conflicting provisions in the "Applicable Law" paragraph of the Order and the Rules of London Court of International Arbitration, not conflicting provisions within the Order itself.  As the Court has already established, the principles of contract formation assist in construing the terms of the

contract.

Because the Court is satisfied that Defendant has established that the goods at issue in this case were "manufactured" outside of the United States, Defendant's Motion to Stay Arbitration on this issue is hereby granted.

>   D. **The Arbitrability of Claims Asserted Under the Connecticut Unfair Trade Practices Act**

Plaintiff also argues, without citation to any authority, that this case is not subject to arbitration because the remedies provided for under the Connecticut Unfair Trade Practices Act, including intervention by the Attorney General, would be foreclosed by arbitration. Plaintiff also argues that insurance rights provided for in the agreement would be unavailable should the case be referred to arbitration and, therefore, conflict with any claim for arbitration, thereby creating ambiguity. The court is not persuaded by this argument, however, as both state and federal courts have held that CUTPA claims are fully arbitrable so long as the language of the arbitration clause in the Agreement is broad enough to encompass the claims at issue in the case. See, e.g., Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 114 L. Ed. 2d 26, 111 S. Ct. 1647 (1991) ("statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA"); Mehler v. Terminix Int'l Co. L.P., 205 F.3d 44, 49-50 (2d Cir. 2000) (finding "indisputably broad" a clause providing for the arbitration of "any controversy or claim between [the parties] arising out of or relating to" the Agreement); Patrowicz v. Transamerica HomeFirst, Inc., 359 F. Supp. 2d 140, 158 (D. Conn. 2005) (explaining that "there is no indication that the Connecticut General Assembly sought to preclude arbitration of CUTPA or other statutory claims"); Disc. Trophy & Co. v. Plastic Dress-Up Co., 2004 U.S. Dist. LEXIS 2659, *13 ("by agreeing to arbitrate disputes, . . . parties do not relinquish their substantive rights under statutes

or laws; they merely designate an arbitral, rather than a judicial, forum for resolution of their respective claims"). Because the language in the Agreement in this case provides that "*[a]ny* controversy, dispute or claim arising out of or relating to this Order, or the breach thereof . . . shall be referred to and finally resolved by arbitration," the language here, as in Mehler, is indisputably broad and, thus, encompasses Plaintiff's allegations under CUTPA. Accordingly, the case is hereby stayed while the case is submitted to arbitration according to the Agreement.

### III.   Conclusion

For the reasons stated above, Plaintiff's Motion to Enjoin Defendant from pursuing arbitration is denied, and Defendant's Motion to Stay Pending Arbitration is granted in part, and denied in part. The matter shall be stayed pending arbitration. Consequently, Defendant's requests to transfer or dismiss are denied without prejudice.

SO ORDERED.

Dated at New Haven, Connecticut, this  6th  day of December, 2005.

>                            /s/
>                      Peter C. Dorsey
>                 United States District Judge