UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALSTOM POWER, INC.,      : | |
|     Plaintiff,      : | |
|      : | |
|     -vs-      : | Civil No.  3:04cv0920 (PCD) |
|      : | |
| SEEPEX, INC.,      : | |
|     Defendant.      : | |

**OMNIBUS RULING ON PLAINTIFF'S AND DEFENDANT'S PENDING MOTIONS**

This case, arising from an alleged breach of a contract between the parties, has been stayed pending arbitration in the London Court of International Arbitration since December, 2005.  Nevertheless, the Court has recently been overwhelmed by papers in connection with this matter.  Currently pending are the following motions: Plaintiff's Motion for Clarification and Motion to Stay [Doc. No. 168]; Plaintiff's Motion for Default Entry [Doc. No. 170]; Plaintiff's Motion for Granting Motion for Clarification [Doc. No. 179]; Defendant's Motion to Strike Response [Doc. No. 181]; Defendant's Motion to Strike Affidavit of Clifton Stalph [Doc. No. 182]; Plaintiff's Motion for a Hearing [Doc. No. 186]; Plaintiff's Motion to Stay [Doc. No. 187]; Plaintiff's Motion for Default Judgment and for a Hearing [Doc. No. 189]; and Plaintiff's Motion for Leave to File a Supplemental Memorandum [Doc. No. 190].  For the following reasons, Plaintiff's Motion for Clarification [Doc. No. 168] and Motion for Granting Motion for Clarification [Doc. No. 179] are **granted in part** and **denied in part**.  Because the Court is able to resolve these motions on the papers, Plaintiff's Motions for Hearings [Doc. Nos. 186, 189] are **denied.**  The remainder of the motions [Doc. Nos. 170, 181, 182, 187, 189, 190] are also **denied.**

I.  BACKGROUND

Familiarity with the facts of the case is presumed, and only facts relevant to the Court's resolution of the presently pending motions will be recited.  On November 19, 1999, Plaintiff Alstom Power, Inc. ("Alstom") drafted and sent to Defendant Seepex, Inc., a Purchase Order for pumping systems.  The Order included a detailed set of terms and conditions, including, among other things, separate provisions entitled "applicable law" and "arbitration."  The parties' dispute centers around these provisions.  The Order provides in relevant part:

> IF THE GOODS SUBJECT TO THIS ORDER ARE MANUFACTURED OUTSIDE OF THE UNITED STATES, THE BELOW ARTICLE SHALL APPLY IN CASE OF ANY DISPUTES ARISING OUT OF THIS ORDER.
>
> 19.  ARBITRATION:  Any controversy, dispute, or claim arising out of or relating to this Order, or the breach thereof, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration under the Rules of London Court of International Arbitration existing at the date thereof, except that in case of any conflict between the provisions of such rules and the provisions of this Order, the provisions of this Order shall govern.  The place of the arbitration shall be London, England.

(November 19, 1999 Purchase Order at p. 17, ¶ 19.)

Plaintiff brought a breach of contract claim against Seepex in this Court in June, 2004.  On December 6, 2005, the Court denied Plaintiff's motion to enjoin the Defendant from pursuing arbitration and granted in part Defendant's motion to stay litigation pending arbitration.  In its ruling (the "December 6th Ruling") [Doc. No. 138], the Court concluded that the arbitration provision applies to the entire contract and rejected Plaintiff's argument that any alleged ambiguity in the contract precludes arbitration.  (Ruling on Pl.'s Mot. to Enjoin Def. Seepex, Inc., from Pursuing Arbitration, December 6, 2005, at 5-11.)  The Court accordingly stayed this

action pending arbitration.  Plaintiff filed a motion for reconsideration, raising legitimate evidentiary questions as to whether the pumping systems provided for in the contract were manufactured outside the United States as required by the arbitration provision.  In a ruling on March 31, 2006 (the "March 31st Ruling") [Doc. No. 164], the Court acknowledged that, in ruling on Defendant's motion to stay arbitration, it had relied in part on Defendant's affidavit testimony that the equipment was manufactured outside the United States, even though Plaintiff had not been accorded adequate opportunity to conduct discovery related to this issue.  (Omnibus Ruling on Pending Motions, March 31, 2006, at 8.)  As such, the Court granted both parties the opportunity to conduct limited discovery for a period of 30 days regarding the applicability of the arbitration provision, after which Alstom and Seepex would each be permitted to submit a supplemental memorandum in support of their respective positions on the arbitration provision.

The outstanding issue for the Court to review was whether the pumps were actually manufactured within the United States, in which case the arbitration provision would not apply to this dispute and the litigation would proceed.  After conducting additional depositions, the parties filed supplemental memoranda of law [Doc. Nos. 172, 174] on May 15, 2006.  The following week Alstom filed a reply and response memorandum [Doc. No. 177] in opposition to Defendant's supplemental memorandum and requested an evidentiary hearing to establish that Defendant had not provided Plaintiff with the pumping systems provided by the contract.  (Pl.'s Reply and Resp. re Resp. to Mot. for Misc. Relief at 3.)  In the months since, the parties have filed numerous other motions and papers arguing whether the litigation has been stayed pending arbitration or whether it should be.  Meanwhile, proceedings before the arbitration tribunal have progressed to the discovery phase.  According to Plaintiff, the tribunal has issued several

allegedly burdensome procedural orders since March 31, 2006, and two in particular allegedly appear to ask Plaintiff to violate the confidentiality provision of certain contracts. (Pl.'s Mot. for Hr'g [Doc. 186] at 5-6; Pl.'s Mot. for Default J. [Doc. 189] at 4-7.)

## II.     DISCUSSION

### A.     Plaintiff's Motions for Clarification, Motions to Stay the Arbitration, and Supplemental Memoranda to the March 31st Ruling

The key issues in several pending motions–Plaintiff's Motion for Clarification and to Stay [Doc. No. 168], Plaintiff's Motion for Granting Motion for Clarifiaction[Doc. No. 179], and Plaintiff's Motion to Stay [Doc. No. 187]–are whether this litigation is currently stayed pending arbitration and, more importantly, whether it should be from now on. Both questions are now answered affirmatively.

This litigation has been stayed since December 6, 2005. Despite Plaintiff's confusion, and despite the Court's delay–through no fault of the Plaintiff–in clarifying its prior rulings, the bottom line has remained the same: the litigation is stayed. In the December 6th Ruling, the Court ordered a stay of litigation pending arbitration. After hearing Plaintiff's arguments that further evidence was required to demonstrate whether the arbitration provision did in fact apply to the contract between Alstom and Seepex, the Court in March, 2006, ordered limited discovery and supplemental briefing regarding the applicability of the arbitration provision. Nowhere in the March 31st Ruling, however, did the Court lift the stay. Rather, it gave the Plaintiff further opportunity to demonstrate and persuade the Court that this dispute should be resolved in this forum, not in the arbitration tribunal. The March 31st Ruling provided, however, that all the while the litigation would remain stayed pending arbitration, and the Court would only lift the

stay if, after conducting limited discovery and arguing persuasively before the Court, the parties convinced the Court that the arbitration provision had been triggered in this matter.

Specifically, the outstanding issue for the parties to brief was whether the equipment manufactured by Seepex and ordered by Alstom pursuant to the contract was "manufactured outside the United States." The arbitration provision of the contract applies only to goods manufactured outside the United States (November 19, 1999 Purchase Order at p. 17, ¶ 19), and this Court correspondingly only has jurisdiction over a contract claim if the goods at issue were manufactured domestically. This is the only issue which the Court concluded in March required further briefing by the parties and review by the Court at this time. The purpose of the limited discovery and supplemental briefing in April and May was not to prove to the Court that Defendant had failed to perform under the contract. However, rather than producing evidence on this matter, Plaintiff has taken this opportunity to promote alternate theories of its case, all of which speak to the merits of their breach of contract claim which the Court has yet to conclude it should be hearing at all.

Plaintiff has failed to establish that the pumping systems were not manufactured outside the United States. Pursuant to the March 31st Ruling, Plaintiff took the deposition of Francis Harris, vice-president of Seepex, on May 2, 2006, but it did not ask him a single question about the origin of manufacture of the Seepex pumps. (Def.'s Supplemental Opp'n Mem. at 3; Ex. A, Harris Dep.) The evidence submitted to the Court subsequent to the March 31st Ruling tends to substantiate Defendant's position that the pumps were manufactured outside the United States: the declaration of Mr. Harris, submitted by Defendant, states that the pumps were manufactured in Germany (Harris Decl. ¶ 4); the Plaintiff's own witness, Clifford Stalph, stated in his

deposition that he was aware of no information suggesting that the goods subject to the Purchase Order were manufactured inside the United States. (Stalph Dep. at 15:12-15.) This evidence alone persuades the Court that the arbitration provision of the contract has been triggered and this litigation should remain stayed pending arbitration.

      Instead of demonstrating that the pumps were actually manufactured in the United States or rebutting Defendant's evidence, Plaintiff offered evidence going to the merits of the case. The only evidence proffered by Plaintiff in their May papers was an affidavit by Clifton Stalph, director of commercial operations at Alstom, stating that Defendant did not provide and also did not manufacture the 70-48BT pumping systems named in the contract. Plaintiff accordingly offers a novel theory to get out from under the arbitration provision: that because the Defendant did not provide the contractually required pumping systems, those systems were not manufactured at all, let alone manufactured outside the United States to trigger the arbitration provision. (Pl.'s Supplemental Memo. at 2.) However, whether the proper pumps were ever provided to Plaintiff, or whether the pumps provided to Plaintiff were materially different enough from those named in the contract so as to constitute a breach, are questions going to the merits of Plaintiff's breach of contract claim, which the Court will not review unless and until it decides that the case should proceed in this forum rather than in arbitration. (The Court also questions the logic of the claim that because Defendant did not provide certain pumps then they must not have been manufactured at all.) Moreover, even if the Court were to conclude that Plaintiff's allegations are true, in which case Defendant did breach the contract, it would still not be appropriate to lift the stay pending arbitration. Plaintiff is clearly mistaken when it flatly states that because Defendant has breached the contract, the arbitration provision does not apply. (Pl.'s

Response and Reply to Def.'s Supplemental Memo. at 1.; Pl.'s Reply to Def.'s Opp. to Pl.'s Request for Evidentiary Hr'g at 2.) Although a breach of contract, as Plaintiff argues, generally relieves the injured party of the further duty to perform the obligations of the contract, that general rule does not apply in this case. The arbitration provision expressly provides that all disputes pertaining to the contract are to be reviewed in arbitration, including disputes regarding "a breach thereof ... [or] any question of its existence, validity, or termination." (November 19, 1999 Purchase Order at p. 17, ¶ 19.) Defendant's alleged breach does not relieve the parties of their contractual obligation to resolve this dispute in arbitration.

In the course of its numerous papers over the past several months, Plaintiff increasingly focused on the merits of the claim, which the Court will not review so long as the litigation is stayed pending arbitration. The Court allowed limited discovery and supplemental papers so as to ensure that arbitration was in fact applicable in this context; the Court will not, however, review the merits of the contract claim at the same time as it resolves whether the arbitration provision applies. Plaintiff also has repeatedly argued that an evidentiary hearing is required to establish that Defendant had not provided Plaintiff with the required pumping system, that is, to establish that Defendant did not perform its obligations under the contract. (See, e.g., Pl.'s Supplemental Mem. at 3; Pl.'s Reply to Def.'s Opp. to Pl.'s Request for Evidentiary Hr'g at 3 ("An evidentiary hearing is necessary in order to determine whether defendant ever intended to provide a 70-48BT pumping system to plaintiff[.]").) The evidentiary finding requested by Plaintiff essentially amounts to a finding that Defendant breached the contract, the ultimate issue in this dispute. In response to Plaintiff's request for a hearing, Defendant submitted testimony stating that the pumps allegedly provided by Defendant were in fact what Plaintiff ordered and

refuting the suggestion that there is a meaningful difference between the different pumps described by Plaintiff.  (Def.'s Opp. Mem. at 3; Decl. of Michael Dillon, Ex. 1 to Def.'s Opp. Mem.)  This exchange clearly addresses the merits of Plaintiff's contract claim rather than the limited issue of whether the pumping systems–no matter what model of pumping systems they were–were manufactured outside the United States and therefore covered by the arbitration provision.  The Court will not review this issue or make any such evidentiary finding so long as the litigation is stayed pending arbitration.

In sum, after being granted the opportunity to conduct additional discovery, and after filing no less than seven motions or opposition briefs regarding the litigation stay since the March 31st Ruling (see Doc. Nos. 168, 172, 177, 179, 180, 186, and 187), Plaintiff has failed to demonstrate that the arbitration provision does not apply to this contract.  As such, the Court now clarifies its prior rulings and resolves the various stay motions by stating that there is a clear arbitration provision in this contract that applies to all goods manufactured outside the United States.  Because Plaintiff has failed to produce any evidence showing otherwise, the Court concludes that the pumping systems at issue are subject to the arbitration provision, and this litigation remains stayed pending arbitration.  Accordingly, all of Plaintiff's motions for a stay of the arbitration and for a hearing on this issue [Doc. Nos. 168, 179, 186, and 187] are **denied**.

**B.     Defendant's Motions to Strike Plaintiff's Reply and Response Supplemental Memorandum and to Strike Clifton Stalph's Affidavit [Doc. Nos. 181, 182]**

Defendant moves [Doc. No. 181] to strike the reply and response memorandum [Doc. No. 177] which Plaintiff filed in response to Defendant's supplemental memorandum filed in compliance with the March 31st Ruling.  Defendant correctly argues that the Court authorized

each party to file one supplemental brief addressing the applicability of the arbitration provision. The March 31st Ruling stated that the parties may submit "a memorandum in support of their respective positions" (March 31st Ruling at 8), and it did not establish a briefing schedule that planned for responsive briefings. The Court thus did not expressly provide for Plaintiff to file responsive briefs, and Plaintiff failed to file a motion for permission to do so. However, the Court also did not expressly provide for Defendant to file a response, separate from its supplemental memorandum, to Plaintiff's request for a hearing in its supplemental memorandum, which it also took it upon itself to do [Doc. No. 178], also without filing a motion for permission to do so. Both parties have thus contributed to the excessive flood of papers to the Court. At this time, given the large number of briefs filed in the past several months, it is more efficient and will better serve the interest of justice for the Court to review all papers currently before it and consider all arguments regarding the applicability of the arbitration provision one final time, even if certain papers were not filed in full compliance with the rules of this Court. As such, Defendant's motion [Doc. No. 181] to strike Plaintiff's reply is **denied**. Defendant may rest assured, however, that any unfair treatment bestowed upon Plaintiff by reviewing this unauthorized briefing does not ultimately disadvantage Defendant because, as discussed above, this brief also failed to address the one outstanding issue–the location of manufacture of the pumping systems–on which the Court had requested briefing.

Defendant also moves [Doc. No. 182] to strike the affidavit of Clifton Stalph, attached to Plaintiff's Reply to Defendant's Opposition to Plaintiff's Request for an Evidentiary Hearing [Doc. No. 180], on the basis that it is a sham affidavit and irrelevant to the issue presently before the Court. Defendant took Mr. Stalph's deposition on May 2, 2006, at which he testified that he

did not have anything to do with the preparation of or negotiation of the terms of the purchase agreement. (Ex. 1 to Def.'s Mot. to Strike Affidavit, Dep. of Clifton Stalph at 12:18-13:1.) Defendant contends that this deposition testimony conflicts with Mr. Stalph's affidavit, which includes statements concerning the negotiations that led to the purchase agreement and a comparison between the terms of the agreement and the pumps that were delivered to Alstom Power. The Court disagrees. Mr. Stalph's affidavit is based on personal knowledge (Stalph Aff. ¶ 1), not on any claim of first-hand experience, as Defendants suggest (Def.'s Mot. to Strike at 1). The fact that he did not participate directly in the negotiations of the purchase agreement does not mean that he could not have personal knowledge as to the terms of the agreement. It is particularly reasonable to conclude that these statements are not in conflict when considering that the affidavit is dated May 31, 2006, nearly a month after his deposition, a period during which Mr. Stalph could have acquired substantial personal (albeit not first-hand) knowledge from his colleagues about the terms of the agreement. Mr. Stalph's deposition and his later sworn deposition are therefore not actually contradictory, see White v. ABCO Eng'g Corp., 221 F.3d 293, 304 (2d Cir.2000), and the Court will not strike the affidavit on that basis. Defendant is correct that much of the information in Mr. Stalph's affidavit is irrelevant to the issue of the applicability of the arbitration provision. However, to the extent the affidavit contains information irrelevant to the issue at hand, the Court has not considered that information in ruling on the pending motions. Accordingly, Defendant's motion to strike Mr. Stalph's affidavit [Doc. No. 182] is **denied**.

**C.     Plaintiff's Motion for Default Entry 55(a) and for Judgment [Doc. No. 170]**

On May 9, 2006, Plaintiff moved for default entry 55(a) and judgment against Defendant [Doc. No. 170] for failure to produce requested documents.  According to Plaintiff, Defendant did not bring allegedly required documents to the deposition of Francis Harris, held in accordance with the March 31st Ruling on May 2, 2006, including the records and addresses of Defendant's customers in Connecticut as requested by Plaintiff.  According to Defendant, neither the Court's Orders nor Plaintiff's deposition notice required Mr. Harris to produce any documents at his deposition.  Defendant also contends that Harris never agreed to provide the requested documents because the requested list of Seepex customers in Connecticut is proprietary information irrelevant to this matter.  (Def.'s Opp. to Pl.'s Mot. for Default Entry and J. at 2.)  At his deposition, Mr. Harris offered to provide the requested documents to Plaintiff, though the parties dispute when and by what means he said he would do so.  (See Pl.'s Mot. at 1; Def.'s Opp. at 2.)  Plaintiff sent a reminder notice to Defendant on May 2nd, but as of May 8th Plaintiff had allegedly not received the requested documents.  On May 5th, Plaintiff faxed a letter requesting the "documentation ... discussed during the course of the deposition."  (Ex. B to Def.'s Opp. to Mot. for Default.)  Defendant contends that on May 9th, its counsel faxed the addresses of the accounts in question to Plaintiff's counsel (Ex. C to Def.'s Opp. to Mot. for Default), though Plaintiff claims that on this date it received only a letter containing the deposition transcript but not the promised documents.  (Pl.'s Mot. at 1.)

The Court does not conclude that Defendant has failed to comply with the Court's orders or Plaintiff's discovery requests.  The Court agrees with Defendant's position that Plaintiff did not formally request the documents now at issue.  (See Pl.'s Am. Notice of Dep., Ex. A to Def.'s Opp. to Mot. for Default J., (stating Plaintiff will depose the person with information and

knowledge as to, among other things, "[a]ny and all documents relating to plaintiff Alstom Power Inc.'s Motion and Memorandum for Discovery and Continuance..." but not requesting the production of any documents).)  Based on a review of the parties' correspondence in early May, it appears that Defendant voluntarily and completely complied with Plaintiff's informal request for information made by fax on May 5th.  More importantly, the requested information has no bearing on the supplemental briefing ordered by the Court in its March 31st Ruling.  (See Def.'s Opp. to Mot. for Default J. at 2.)  The requested documents do not fall within the subject of the limited scope of discovery ordered by the Court in the March 31st Ruling to determine the applicability of the arbitration provision (see March 31st Ruling at 8), so Defendant's failure to produce them does not merit a default entry.  Plaintiff's Motion for Default Entry and Judgement [Doc. No. 170] is **denied**.

**D.     Plaintiff's Motion for Default Judgment as to Seepex [Doc. No. 189]**

On October 17, 2006, in what appears to be another attempt to arrange an evidentiary hearing, Plaintiff filed a motion for default judgment [Doc. No. 189] against Seepex for failure to file a responsive pleading to Plaintiff's Amended Complaint and requested an immediate hearing to establish damages.  Nearly a year ago, on November 3, 2005, Plaintiff filed a motion to file an amended complaint, which was granted on November 9, 2005.  Plaintiff argues that because Defendant has not filed a pleading in response to the Amended Complaint subsequent to the Court's March 31st Ruling, it is in default and judgment should be entered against it.  As discussed above, this litigation was stayed pending arbitration by the Court's December 6th Ruling.  The March 31st Ruling continued the proceedings in this forum only insofar as the Court decided to review the limited issue of whether the pumps were manufactured outside the United

States and therefore rendered the contract subject to arbitration.  It did not, however, lift the stay on the litigation, and so Defendant has had no obligation since the December 6th Ruling to respond to Plaintiff's Amended Complaint or otherwise proceed with litigation.  Accordingly, the Court will not conclude that Defendant has defaulted or that judgment should be entered against it.  Plaintiff's Motion for Default Judgment [Doc. No. 189] is **denied.**

**E.**      **Plaintiff's Motions to Stay Arbitration Procedural Orders [Doc. Nos. 187, 191]**

Plaintiff has requested this Court to stay the arbitration tribunal's Procedural Order No. 11 on the basis that it appears to order Plaintiff to violate its contractual confidentiality policies.  (See Pl.'s Mot. for Immediate Hr'g [Doc. No. 187] at 4-8.)  Because this litigation is stayed pending arbitration, the Court will not at this time address Plaintiff's arguments about any alleged confidentiality problems caused by the arbitration tribunal's procedural orders.  Accordingly, Plaintiff's motion [Doc. No. 190] for leave to file a supplemental memorandum to Doc. No. 187, which requests a stay of the arbitration tribunal's Procedural Order No. 12, is also **denied**.

**III.    CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Clarification [Doc. No. 168] and Motion for Granting Motion for Clarification [Doc. No. 179] are **granted in part** and **denied in part**.  Plaintiff's Motions for Hearings [Doc. Nos. 186, 189] are **denied.**  Plaintiff's Motion for Default Entry [Doc. No. 170], Motion to Stay [Doc. No. 187], Motion for Default Judgment [Doc. No. 189], and Motion for Leave to File a Supplemental Memorandum [Doc. No. 190] are **denied.**  Defendant's Motion to Strike Response [Doc. No. 181] and Motion to Strike Affidavit of Clifton Stalph [Doc. No. 182] are **denied.**  This litigation hereby remains stayed pending arbitration.

SO ORDERED.

                                        Dated at New Haven, Connecticut, October 31st, 2006.

                                                          /s/
                                      Peter C. Dorsey, U.S. District Judge
                                             United States District Court